UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
VENUS STINNETT,                               :
                                              :
                        Plaintiff,            :
                                              :
        -against-                             :          **OPINION AND ORDER**
                                              :           16-CV-04554 (DLI)(LB)
DELTA AIR LINES, INC., and                    :
QUEST DIAGNOSTICS CLINICAL                    :
LABORATORIES, INC.                            :
                                              :
                        Defendants.           :
-------------------------------------------------------- X

**DORA L. IRIZARRY, Chief U.S. District Judge:**

On August 15, 2016, Plaintiff Venus Stinnett ("Plaintiff") filed the instant action against

her former employer, Delta Air Lines, Inc. ("Delta"), and Quest Diagnostics Clinical Laboratories,

Inc. ("Quest"), a drug testing company, (collectively, "Defendants"). (*See generally*, Complaint

("Compl."), Dkt. Entry No. 1.) On January 1, 2017, Plaintiff filed an Amended Complaint. (*See*

Amended Complaint ("Am. Compl."), Dkt. Entry No. 22.) In her Amended Complaint, Plaintiff

alleged that Delta discriminated against her on the basis of sex in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the N.Y. Exec. Law ("NYSHRL") §§

296 *et seq.*, and the N.Y.C. Admin. Code ("NYCHRL") §§ 8-107 *et seq.* (*See* Am. Compl. ¶¶ 98-

99, 104-105, 114-115.) Plaintiff also asserts that Delta discriminated against her on the basis of

her disability in violation of the Americans with Disabilities Act ("ADA"), as amended 42 U.S.C.

§§ 12112 *et seq.*, NYSHRL, and NYCHRL. (*See* Am. Compl. ¶¶ 132-133, 104-105, 114-115).

Finally, Plaintiff alleges retaliation and hostile work environment in violation of Title VII, the

ADA, NYSHRL, and NYCHRL, as well as common law negligence. (*See* Am. Compl. ¶¶ 1, 101-

02, 135-36, 108-09, 118-19, 137-43.)

Pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, Defendants moved to dismiss the Amended Complaint in its entirety for failure to state a claim upon which relief may be granted. (*See* Delta's Mem. in Supp. of Mot. to Dismiss ("Delta's Mem."), Dkt. Entry No. 17; Quest's Mem. in Supp. of Mot. to Dismiss ("Quest's Mem."), Dkt. Entry No. 20.) Plaintiff opposed the Motion. (*See* Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), Dkt. Entry No. 25.) For the reasons set forth below, Defendants' motions to dismiss are granted and the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, and negligence claims.

## BACKGROUND[1]

Plaintiff is a female who was employed by Delta as a flight attendant for approximately seven years. (Am. Compl. ¶¶ 8, 12, 82.) Plaintiff began her employment around May 2007 and was terminated by a letter dated June 19, 2014. (*Id.* ¶ 82.)

Over the course of her employment, Plaintiff allegedly suffered from multiple disabilities, including Polycystic Ovarian Syndrome, which rendered her infertile and unable to take a pregnancy to term, and asthma. (*Id.* ¶¶ 21-23.) Because of her infertility, Plaintiff suffered several miscarriages, and, in 2007, she underwent fertility treatments to facilitate pregnancy. (*Id.* ¶¶ 17-18.) She was prescribed amoxicillin as a part of her infertility treatment plan. (*Id.* ¶ 19.) Plaintiff alleges that she informed Delta of her disabilities and the medications she was taking as part of her fertility treatment plan and notified Delta every time she was prescribed a new medication.[2] (*Id.* ¶¶ 20, 24, 29-30.)

---

[1] The following facts are drawn from the Amended Complaint filed in this action, which are presumed true for purposes of determining the motions to dismiss.

[2] It is not clear from the Amended Complaint whether she informed Delta of every prescribed medication she was taking or just those that pertained to her infertility disability. (*See generally*, Am. Compl. ¶¶ 29-31.)

In addition, she alleges that Delta threatened her with suspension for taking approved leave under Family Medical Leave Act ("FMLA") in 2007. (*Id.* ¶¶ 17, 25-26.)

The incident that gives rise to this suit occurred on or about April 23, 2014 when Plaintiff disembarked at John F. Kennedy airport ("JFK") and Delta directed her to take an alcohol and drug test. (*Id.* ¶¶ 44, 49.) Plaintiff tested positive for cocaine and alcohol. (*Id.* ¶ 54.) Plaintiff alleges two reasons for her positive drug test: (1) she was prescribed (and taking) Cocaine HCL 4% to treat her "severe nosebleed[s]" (*Id.* ¶ 57.); and (2) she was prescribed (and taking) amoxicillin, which can generate a false positive for cocaine. (*Id.* ¶ 58.) As for the positive alcohol result, Plaintiff contends that this "must have been a laboratory error" because she was "not under the influence of . . . alcohol," (*Id.* ¶¶ 56, 52.), though she admits to consuming alcohol the night prior to her flight back to JFK (*Id.* ¶ 39.).

Subsequent to the positive drug and alcohol test, Plaintiff contends that Delta informed her that she would be reinstated if she attended a rehabilitation program. (*Id.* ¶ 69.) Plaintiff successfully completed a rehabilitation program, but Delta did not reinstate her. (*Id.* ¶¶ 69-70, 73-74.) Plaintiff claims that Delta reinstated several employees after they completed the rehabilitation program, including six male flight attendants who "were known abusers of drugs and alcohol." (*Id.* ¶¶ 75-77.)

Plaintiff was notified of her employment termination by letter dated June 19, 2014. (*Id.* ¶ 82.) Her termination led her to file a charge of discrimination with the United States Equal Employment Opportunity Commissions ("EEOC") on March 5, 2015. (*Id.* ¶ 3.) Plaintiff received a right to sue letter from the EEOC dated May 17, 2016, and timely commenced the instant action on August 15, 2016. (*Id.* ¶¶ 4-6.)

On November 22, 2016, Defendants moved separately to dismiss the Complaint for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6). (*See generally*, Delta's Mem; Quest's Mem.) Rather than oppose Defendants' motions, Plaintiff filed an Amended Complaint. Defendants asked the Court to construe their original motions as motions to dismiss the Amended Complaint. Delta contends that dismissal is warranted because Plaintiff has not alleged sufficient facts to state a claim for discrimination on the basis of sex and disability, retaliation, hostile work environment, or negligence. (Delta's Mem. at 6-9.) Quest contends that dismissal is warranted because it was not Plaintiff's employer and was unaware of Plaintiff's identity, gender, or alleged conditions until she filed her Complaint. (Quest's Mem. at 13-15.)

## LEGAL STANDARD

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept

"legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## I. The Parties' Exhibits

As an initial matter, the parties include numerous exhibits in their motion papers. When material outside the complaint is "presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). For the purposes of this rule, however, the complaint is deemed to include writings and documents attached to the complaint, referenced in the complaint, or integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002); Fed. R. Civ. P. 10(c). A document is "integral" to the complaint where "the complaint relies heavily upon its terms and effects." *Chambers*, 282 F.3d at 153 (citations omitted). "A plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original). The court may also consider "matters of which judicial notice may be taken." *Id.* (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)); Fed. R. Evid. § 201(b). Judicial notice may be taken when "a fact . . . is not subject to reasonable dispute because it: (1) is

generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. § 201(b).

"Plaintiffs are harmed when material outside the complaint is considered on a motion to dismiss because they lack notice that such consideration is taking place." *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp.2d 334, 344 (E.D.N.Y. 2008) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "Rule 12(d)'s conversion requirement remedies this problem by 'deter[ring] trial courts from engaging in fact finding when ruling on a motion to dismiss and ensur[ing] that when a trial judge considers evidence dehors the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it." *Id.* Further, a court may not consider external materials in its ruling when reliance on such materials leads the court to "making a finding of fact that *controvert[s]* the plaintiff's own factual assertions set out in its complaint." *Global Network Commc'ns, Inc.*, 458 F.3d at 156 (emphasis in original).

A.      **Exclusion of Delta's Exhibits**

Delta asserts that the Court may take judicial notice of what Cocaine HCL 4% is generally used for. (Delta's Mem. at 3 n.1.) In addition, Delta contends that the Court may consider three exhibits attached to its motion to dismiss without converting the motion into one for summary judgment: (1) a letter to Delta from Plaintiff's counsel; (2) Plaintiff's drug and alcohol test results; and (3) the Reasonable Suspicion Testing – Leadership Checklist performed for Plaintiff. (Delta's Mem. at 3-4 n.2-4.) Plaintiff does not oppose the Court's consideration of these three exhibits or the Court taking judicial notice. (*See generally*, Pl.'s Opp'n.)

The Court declines to take judicial notice of Delta's proffered fact pertaining to the general use of Cocaine HCL 4% because it may be reasonably disputed and consideration of a reasonably disputed fact is inappropriate on a motion to dismiss. Further, Delta does not provide any legal authority in support of its position that the Court can take judicial notice of the proffered fact. *See generally*, *Cabrera v. Schafer*, 178 F. Supp.3d 69, 72 (E.D.N.Y. 2016) (taking issue with the defendants' failure to provide legal authority in support of their asserted position). However, even if the Court did take notice, the alleged fact is irrelevant to the disposition of this case and, thus, the Court declines to take notice. *See generally*, *U.S. v. Byrnes*, 644 F.2d 107, 112 (2d Cir. 1981) (upholding the lower court's refusal to take judicial notice of regulations that were irrelevant to the case).

The Court also declines to consider counsel's letter to Delta, the Reasonable Suspicion Testing checklist, and the subsequent test results because consideration of such documents may raise a material issue of fact that is inappropriate on a motion to dismiss. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) ("It must . . . be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal citation and quotation marks omitted). Further, Delta seeks to introduce exhibits attached to its motion papers that would rebut or undermine plaintiff's allegations in the complaint.

Per *Global Network Communications, Inc.*, the Court should not consider facts that will lead it to controvert the plaintiff's factual allegations, which are to be taken as true. 458 F.3d at 156; *See also Iqbal*, 556 U.S. at 678. Lastly, Delta contends that the Reasonable Suspicion Testing – Leadership Checklist is incorporated by reference and is integral to the Complaint. (Delta's Mem. at 4 n.3.) Contrary to this contention, the document is neither incorporated by reference nor is it integral to the Complaint. A document is incorporated by reference if the complaint makes,

"a clear, definite and substantial reference to the document[]." *McLennon v. City of New York*, 171 F. Supp.3d 69, 88 (E.D.N.Y. 2016) (internal citation and quotation marks omitted). Notably, Delta conceded that the Amended Complaint mentions the interaction with Mr. Gilmartin (one of the Defendant's managers at JFK), who wrote the document, but not the Reasonable Suspicion Testing document itself. (Delta's Mem. at 3-4 n.3; Am. Compl. ¶¶ 49-50.) While subtle, this distinction is crucial because it demonstrates that Plaintiff did not make a clear and definite reference to the Reasonable Suspicion Testing document. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) (noting "implicit reference" insufficient to incorporate by reference).

In addition, the document is not integral to the Complaint. A document is integral to the complaint where the plaintiff "(1) has actual notice of the document and its information and (2) has relied upon the documents in framing the complaint." *McGlennon*, 171 F. Supp.3d at 89 (internal citation omitted). However, "[e]ven if a document meets the twin requirements of integrality—reliance and notice—a court may still not consider it on a motion to dismiss if there is a dispute 'regarding the authenticity or accuracy of the document' or 'the relevance of the document' to the dispute." *Madu, Edozie & Madu, P.C.*, 265 F.R.D. at 123 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). In this case, though the document was not referenced in the Complaint, the circumstances that gave rise to the drug testing are in dispute. Plaintiff contends, and Delta seeks to undermine her contention, that she was not intoxicated, was able to perform her flight attendant duties without difficulty, and no one approached her and questioned her sobriety. (*See* Am. Compl. ¶¶ 41, 52.) Furthermore, the circumstances leading to Plaintiff's drug and alcohol test are not particularly relevant to this case because neither party disputes the fact that she was drug tested. The issue is the circumstances after the positive drug and alcohol

test. Accordingly, the Court does not consider Plaintiff's letter to Delta, the Reasonable Suspicion Testing checklist, and the drug and alcohol test results in deciding the motions to dismiss.

**B.      Exclusion of Plaintiff's Exhibits**

Plaintiff asserts that the Court may consider eleven exhibits attached to her Opposition to Defendants' Motion to Dismiss without converting the motion into one for summary judgment: (A) Federal Drug Testing Custody and Control Form; (B) U.S. Department of Transportation Alcohol Testing Form; (C) correspondence from Health Care Alternatives of West Florida, Inc.; (D) correspondence from NYS Department of Labor Unemployment Division; (E) medical report from Health Care Alternatives of West Florida, Inc.; (F) statement from Captain William Davis; (G) email from Alan Morris, M.D.; (H) executed Health Care Alternatives of West Florida Authorization for Release of Medical Records; (I) declaration of Dr. Alan Morris in Support of Opposition to Defendants' Motion to Dismiss; (J) medical notice from Alan Morris, M.D.; and (K) affidavit of Venus Stinnett. (*See* Pl's Opp'n at 2, 5-6, 10, 13-14.) Delta opposes the Court's consideration of these eleven exhibits. (*See* Delta's Reply in Further Supp. of Mot. to Dismiss ("Delta's Reply"), at 2 n.1.)

The Second Circuit has held that consideration of affidavits, exhibits, or factual assertions contained in legal memoranda is reversible error. *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (citing *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (additional citations omitted)). Plaintiff asks the Court to consider affidavits from both Dr. Alan Morris and herself. (*See* Pl.'s Opp'n at 5, 10.) The affidavits must be excluded because *Friedl* flatly prohibits the Court from considering them without converting the instant motion into one for summary judgment. 210 F.3d at 83. Similarly, the Court cannot consider the correspondence from Health Care Alternatives of West Florida, Inc., the statement from Captain William Davis, the email from

Alan Morris, M.D., and the medical notice from Alan D. Morris, M.D. because, as a represented party, Plaintiff should have attached them to her amended complaint, not her opposition to the motion to dismiss. *Kpaka v. City Univ. of N.Y.*, 2015 WL 4557331, at *1 n.3 (S.D.N.Y. July 28, 2015) ("[C]ourts in this Circuit have generally made clear that 'a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss . . . .'" (internal citations omitted). Lastly, the Court will not consider the Federal Drug Testing Custody and Control Form, the U.S. Department of Transportation Alcohol Testing Form, correspondence from NYS Department of Labor Unemployment Division, the medical report from Health Care Alternatives of West Florida, Inc., or the executed Health Care Alternatives of West Florida Authorization for Release of Medical Records because they were not attached to or referenced in the Amended Complaint and Plaintiff did not rely on the documents in bringing suit. Thus, the documents are not sufficiently integral to the Amended Complaint sufficient to warrant court consideration.

## DISCUSSION

### I. Title VII Discrimination Claims

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A claim of employment discrimination under Title VII is analyzed using the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing: "(1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under

circumstances giving rise to an inference of discriminatory intent." *Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015) (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)). A circumstance that gives rise to an inference of discrimination for purposes of making out a *prima facie* case is where "the employer treated plaintiff less favorably than a similarly situated employee outside [her] protected group." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal citation and quotation marks omitted).

To defeat a motion to dismiss, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated[.]" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). In particular, with respect to the fourth prong of the *McDonnell Douglas* analysis, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Id.* (internal citation and quotation marks omitted.) Nonetheless, "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015) (Summary Order) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)) (alteration in original).

### A.     Title VII Claim Against Quest

As an initial matter, Plaintiff erroneously included Quest in her Title VII gender discrimination claim in her Complaint. (*See* Compl. ¶ 1.) Plaintiff failed to correct this error in her Amended Complaint. (*See* Am. Compl. ¶ 1.) However, Plaintiff noted in her opposition papers that she "cured the defect in her original complaint and is not suing Defendant Quest under "Title VII." (Pl's Opp'n at 10 n.2.) Ordinarily, "allegations added in opposition to a motion to dismiss cannot cure defects in the operative pleading." *Guity v. Uniondale Union Free Sch. Dist.*, 2017

WL 1233846, at *2 (E.D.N.Y. Mar 31, 2017) (internal citation and quotation marks omitted).  In any event, Plaintiff's gender discrimination claim against Quest is meritless because Quest is not Plaintiff's employer and, thus, is not covered by the statute.  *See Clackamas Gastroenterology Assoc., P.C. v. Wells,* 538 U.S. 440, 450 (2003) (determining that an employer, for the purposes of the ADA and other antidiscrimination laws, is an entity that "[c]an hire and fire employees, can assign tasks to employees and supervise their performance . . . ."); *See also Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 372 (2d Cir. 2006) (denying the existence of an employee-employer relationship "[w]here no financial benefit is obtained by the purported employee from the employer . . . .") (internal citation and quotation marks omitted); *See generally*, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 12112(a).  Thus, because Quest could not fire, assign, or supervise Plaintiff, it was not Plaintiff's employer within the meaning of the statute and Plaintiff's allegations fail the first prong of the Title VII analysis.  Accordingly, the Title VII claim brought against Quest in Plaintiff's Amended Complaint is dismissed.

### B.     Title VII Claim Against Delta

There is no dispute that Plaintiff satisfies the first, second, and third prong of the *McDonnell Douglass* framework.  Plaintiff is a female and thus a member of a protected class. (Am. Compl. ¶ 8.)  *See* 42 U.S.C. § 2000e *et seq.*  (an employer may not discriminate on the basis of sex).  In addition, Delta does not raise an issue with Plaintiff's qualifications.  (*See generally*, Delta's Mem; Delta's Reply.)  *See Whyte v. Nassau Health Care Corp.*, 969 F. Supp.2d 248, 255 (E.D.N.Y. 2013) ("[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw.") (internal citation and quotation marks omitted).  Plaintiff also satisfies the third prong because she was fired and termination constitutes an adverse employment action.  (Am. Compl. ¶ 82.)  *See Vega*, 801 F. 3d at 85

(examples of adverse employment actions include, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation"); *Uwakwe v. Bridging Access to Care Inc.*, 2017 WL 1048070, at *6 (E.D.N.Y. Mar. 16, 2017) ("[B]eing fired is *per se* an adverse employment action."). Therefore, only the fourth prong of the *prima facie* case is at issue: whether Plaintiff's termination took place under circumstances giving rise to an inference of discrimination. The Court finds that Plaintiff has failed to establish a *prima facie* case with respect to the fourth prong.

After plausibly alleging that the employer took adverse action against her, a plaintiff must allege facts supporting her claim that, "[her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87. "[T]he 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason." *Id.* (quoting *Stratton v. Dep't for the Aging for N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997)). A plaintiff may meet this burden through direct evidence of intent to discriminate, or "by indirectly showing circumstances giving rise to an inference of discrimination." *Id.*

One way of raising an inference of discrimination is through a "showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside [her] protected group . . . ." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quoting *Mandell*, 316 F.3d at 379). "To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (internal citation and quotation marks omitted). "In undertaking their analysis,

courts generally look to whether a plaintiff and her competitors were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Ray v. Weit*, 2016 WL 1229056, at *4 (E.D.N.Y. Mar. 28, 2016) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). A showing of disparate treatment is only one method of raising an inference of discrimination and a plaintiff also may create a "'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Vega*, 801 F.3d at 87 (internal citation omitted).

Plaintiff contends that she was discriminated against on the basis of her sex. (Am. Compl. ¶ 99.) Specifically, Plaintiff alleges that she was not reinstated after completing alcohol and drug rehabilitation when "Delta reinstated several men with a clear drug/alcohol disability." (Am. Compl. ¶ 76; *See also Id.* at ¶¶ 70, 73, 75-79, 99). However, Plaintiff alleges few facts to suggest a plausible inference of discriminatory motive. Though Plaintiff alleges that both she and the men were flight attendants, there are few allegations beyond that which qualifies the employees as similarly situated to Plaintiff in all material respects. (*See* Am. Compl. ¶¶ 12, 78). For example, Plaintiff alleges that Delta reinstated men with a "clear drug/alcohol disability" whereas she claims she was "not an abuser of drugs or alcohol." (Am. Compl. ¶ 76; Pl's. Mem. at 11.) Thus, by Plaintiff's own words the men were different than her in a material respect, namely that they had a drug or alcohol disability, while Plaintiff did not.[3]

In addition, Plaintiff fails to demonstrate that the conduct she engaged in was similar to the employees in question. In her Amended Complaint, Plaintiff concedes that she took Cocaine HCL

---

[3]      While the Court need not fully address why the disability distinction is critical at this juncture, it is worth noting for the purposes of distinguishing these men from the Plaintiff that the ADA "treat[s] alcoholism as an impairment . . . . [and] prohibit[s] discrimination on the basis of a perceived impairment." *Makinen v. City of New York*, 857 F.3d 491, 495 (2d Cir. 2017). In addition, this Court has found that drug addiction is a disability protected by the ADA. *See Divilio v. N.Y. Dep't. of Sanitation*, 2006 WL 1662668, at *3 (E.D.N.Y. June 8, 2006); *See also* 42 U.S.C. § 12114.

4% during the flight, consumed alcohol the night before she was picked up at 4:30 a.m., was tested for drugs and alcohol immediately upon arrival to JFK, and that the tests revealed a positive result for drugs and alcohol. (Am. Compl. ¶¶ 37, 39, 41, 49, 54-55, 57.) However, Plaintiff did not allege that the male employees in question engaged in the same conduct that resulted in their termination, rehabilitation, and subsequent reinstatement. (*See generally*, Am. Compl.; Pl.'s Opp'n.) Because Plaintiff failed to demonstrate that she was "similarly situated in all material respects" to the male employees she identifies, she has not established an inference of discrimination. *Brown*, 756 F.3d at 230. Plaintiff's allegations also do not demonstrate a "'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination" since she only alleges a single incident. *Vega*, 801 F.3d at 87 (internal citation omitted). Accordingly, Plaintiff's Title VII discrimination claim is dismissed.

## II.     ADA Discrimination Claims

The ADA establishes that no covered entity "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To plead a *prima facie* case of discrimination under the ADA, a plaintiff must show that: "(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)) (quotation marks omitted). While a plaintiff is not required to make out a *prima*

*facie* case in order to survive a motion to dismiss, the elements of the claim are instructive in analyzing whether a plaintiff has alleged sufficient facts giving rise to a claim. *See Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens*, 2014 WL 808013, at *7 (E.D.N.Y. Feb. 28, 2014). Thus, to succeed at the pleading stage in an ADA claim, "a plaintiff must plausibly allege that (1) her employer took an adverse action against her, and (2) the disability or perceived disability was a 'motivating factor' in the decision." *Miller v. N.Y.C. Dep't of Educ.*, 2016 WL 5947272, at *1-3 (E.D.N.Y. Oct. 12, 2016) (citing *Vega*, 801 F.3d at 84-87) (dismissing claim for failure to provide facts that connected potential discrimination to Plaintiff's torn ligament and spinal damage).

Under the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include performing manual tasks, eating, walking, standing lifting, and working. 42 U.S.C § 12102(2)(A). "A major life activity also includes the operation of a major bodily function, including . . . reproductive functions. 42 U.S.C. § 12102(2)(B). To determine if a major life activity is substantially limited, courts in this Circuit rely on the EEOC regulations. *See Anderson v. Nat'l Grid, PLC*, 93 F. Supp.3d 120, 133 (E.D.N.Y. 2015) (quoting *Francis v. City of Meriden*, 129 F.3d 281, 283 n.1 (2d Cir. 1997)). Under those regulations, "[t]he term substantially limits shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA and is not meant to be a demanding standard." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i)) (internal quotation marks omitted). Accordingly, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered

substantially limiting." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)) (internal quotation marks omitted).

### A. ADA Claim Against Quest

The ADA claim against Quest is dismissed for the same reason as the Title VII claim. *See* discussion *supra* Section III.A. Quest is not, and was not, Plaintiff's employer when Delta terminated her employment. An individual may not bring an ADA suit against a non-employer. *See Clackamas Gastroenterology Assoc. P.C.*, 538 U.S. at 451 (determining that the ADA and other antidiscrimination laws only apply to employer-employee relationships and describing that "[t]he employer can hire and fire employees, can assign tasks to employees and supervise their performance"); *See also Gulino* 460 F.3d at 372 (denying the existence of an employee-employer relationship "[w]here no financial benefit is obtained by the purported employee from the employer"); *See generally*, 42 U.S.C. § 12112(a); 42 U.S.C. § 12111(2); 42 U.S.C. §§ 12111(4)-(5). Accordingly, Plaintiff's ADA claim against Quest is dismissed.

### B. ADA Claim Against Delta

In Amended Complaint, Plaintiff alleges that she is disabled because of Polycystic Ovarian Syndrome, asthma, and infertility. (Am. Compl. ¶¶ 21-23.) Although Plaintiff alleges all these disabilities, it is clear from her Amended Complaint and opposition papers that she is referring to infertility as her disability. (*See generally*, Am. Compl.; Pl.'s Opp'n.) In addition, Plaintiff fails to address asthma elsewhere in her Amended Complaint and opposition papers. Thus, this Court considers her asthma claim to be abandoned. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2014 WL 4723299, at *7 (S.D.N.Y. 2014) ("A plaintiff abandons a claim where [s]he raises it in the complaint but remains silent on the issue elsewhere in the record.").

The parties do not dispute that the first three prongs of the ADA claim are satisfied; Delta is a covered entity subject to the ADA; Plaintiff's infertility is a disability within the meaning of the ADA; and she was qualified to perform the essential functions of her job. (*See generally*, Pl.'s Opp'n; Defs.' Mem.) However, Delta takes issue with the fourth prong of the analysis. Delta contends that Plaintiff cannot "plausibly connect her . . . covered status to any adverse employment action." (Delta's Mem. at 8; Delta's Reply at 2-3.) More specifically, Delta argues that Plaintiff cannot demonstrate a link between her infertility and Delta's decision to terminate her employment. (Delta's Mem. at 8; Delta's Reply at 3.) The Court agrees with Delta.

While Plaintiff contends that Delta discriminated against her on the basis of her infertility, the crux of her argument pertains to her use of substances that result or could result in a positive drug test. (*See generally*, Am. Compl.; Pl.'s Opp'n.) Thus, her claims implicate the circumstances surrounding her disability and her subsequent conduct, rather than the disability itself. This Court has recognized that there are circumstances in which termination is not based on disability, but rather an employee's misconduct. *See Fahey v. City of New York*, 2012 WL 413990, at *9 (E.D.N.Y. Feb. 7, 2012) ("The ADA does not excuse workplace misconduct because the misconduct is related to a disability") (internal citation and quotation marks omitted)); *Cowan v. MaBSTOA*, 961 F. Supp. 37, 41-42 (E.D.N.Y. 1997) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843 (6th Cir. 1995) (finding that the university's termination of an employee for driving under the influence of alcohol was permissible because substance abusers "are not exempted from reasonable rules of conduct.")); *See also Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 (9th Cir. 1995) ("Courts have recognized a distinction between termination of employment because of misconduct and termination of employment because of a disability."); *Cowan*, 961 F. Supp. at 41-42 ("[A]n employee is not discharged solely by reason of [her] disability where firing is based on

extended and undocumented absences from work.") (internal citation omitted).  Plaintiff fails to point to any evidence that could support an inference that her termination is connected to her disability.  In fact, Plaintiff appears to acknowledge that she was fired not because of her infertility, but because she tested positive for cocaine and alcohol intoxication.[4]  (*See* Am. Compl. ¶¶ 39, 57.)

Further, Plaintiff alleges that she is disabled because she is infertile, yet readily acknowledges that she tested positive for cocaine because of the medication prescribed to her to stop a bloody nose.  Thus, by her own acknowledgement, she does not allege that Delta was aware of her medication for the bloody nose, only that she made them aware of the medication prescribed for her fertility treatment.  Therefore, Plaintiff has not pled facts sufficient to give rise to an inference of disability discrimination.  In addition, even if Plaintiff lawfully was prescribed the Cocaine HCL 4% and the drug test result was, in fact, a "false positive," she still would fail the causal prong of the ADA analysis because of her positive test for alcohol use.  Plaintiff has failed to set forth anything in her Amended Complaint or opposition papers that would allow the Court to infer that her termination was motivated by disability discrimination.  Accordingly, Plaintiff's disability discrimination claim is dismissed.

## III.    Reasonable Accommodation Claim

Plaintiff alleges that Delta failed to accommodate her disability when it failed to consider her medication when they terminated her for a positive drug and alcohol test.  (*See generally*, Am. Compl. ¶ 60; Pl's Opp'n at 1).  To establish a claim for failure to accommodate under the ADA, a plaintiff must demonstrate that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the

---

[4]      As discussed above, Plaintiff makes no attempt to tie her termination to her asthma or Polycystic Ovarian Syndrome.

employer has refused to make such accommodations." *McMillan*, 711 F.3d at 125-126 (quoting *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). The Second Circuit has held that, "in defining discrimination to include the failure to make reasonable accommodation for an otherwise qualified employee's known disability, [the ADA] does not require an employer to make accommodation for an impairment that is not a disability within the meaning of the Act or that does not result from such a disability." *Buckley v. Consol. Edison Co. of N.Y., Inc.*, 155 F.3d 150, 156 (2d Cir. 1998).

Plaintiff contends that "[p]rior to the test [that] subsequently resulted in her termination, she again asked Defendant Delta to accommodate her condition and to take into consideration her drug regimen" and "[Delta] ignored her request." (Pl.'s Opp'n at 11.) By Plaintiff's own account, her disability is infertility, and she was taking amoxicillin as part of her fertility regimen. (Am. Compl. ¶¶ 23, 19.) Plaintiff does not allege at any point that her disability is excessive nosebleeds. (*See generally*, Am. Compl.; Pl's Opp'n.) As such, Delta was not required to take the Cocaine HCL 4% into consideration when Plaintiff tested positive for cocaine because an employer is not required to accommodate an impairment that is not considered a disability. *Buckley*, 155 F.3d at 156. Accordingly, Plaintiff's reasonable accommodation claim is dismissed.

## IV. ADA Retaliation Claim[5]

Plaintiff alleges that Delta terminated her in retaliation for seeking a reasonable accommodation for her disability and for requesting FMLA leave. (*See generally*, Am. Compl. ¶¶ 60, 25-26; *See also* Pl.'s Opp'n at 10-11.) Claims for retaliation are analyzed similarly to those alleged under the ADA. *Widomski v. State Univ. of N.Y. (CUNY) at Orange*, 748 F.3d 471, 475

---

[5] Plaintiff lists Title VII retaliation as her second cause of action, but fails to allege any facts would make the claim plausible on its face. (Am. Compl. ¶ 102.) Further, Plaintiff only addresses the ADA retaliation claim in her opposition papers and as such, her conclusory statement that she was retaliated against under Title VII violates the *Iqbal* standard. (*See* Pl.'s Opp'n at 10-11.) *See* 556 U.S. at 678.

(2d Cir. 2014). "In order to establish a prima facie case of retaliation, [the Plaintiff] must show that: (1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against h[er]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). The "allegations in the complaint need only give plausible support to the reduced prima facie requirements[.]" *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (internal citation and quotation marks omitted).

Even if Plaintiff's termination was premised on activities that constituted protected activity that Delta was aware of, her retaliation claim fails the causal prong. "[T]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Infantolino v. Joint Indus. Bd. of Elec. Indust.*, 582 F. Supp.2d 351, 359 (E.D.N.Y. 2008) (internal citation and quotation marks omitted). Delta argues that Plaintiff continued to work as a flight attendant for seven years after the FMLA incident, which renders Plaintiff's retaliation claim meritless. (Delta's Mem. at 10.) The Court agrees.

Courts have found no causal connection when the length of time between the protected activity and the alleged retaliation is too attenuated. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all.") *See Treglia*, 313 F.3d at 720 ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."). In this case Plaintiff alleges that she was approved for FMLA leave in 2007, the same year she commenced employment with Delta, and subsequently was threatened on an undisclosed date with termination for an unapproved absence despite the approved FMLA leave.

(Am. Compl. ¶¶ 17, 25.) However, the amount of time between the alleged violation (presumably around 2007) and Plaintiff's termination in 2016 fails to allow the Court to draw a connection between her termination and Delta's alleged threat. Thus the time between the FMLA incident and this suit is too attenuated to establish the causal prong of a retaliation claim.

Plaintiff's claim that she was terminated in retaliation for seeking a reasonable accommodation also fails for several reasons. First, Plaintiff's reasonable accommodation claim is meritless because Delta was not required to take into consideration the Cocaine HCL 4% she was using for excessive nosebleeds, which resulted in her positive drug test, because nosebleeds are not a disability, and even if they were, there is no allegation that Delta was aware that Plaintiff suffered from them. Second, Plaintiff, by her own admission, was terminated for failing a drug and alcohol test, not because she asked Delta to take her medication into consideration. (*See generally*, Am. Compl.; Pl.'s Opp'n.) Accordingly, Plaintiff's retaliation claim is dismissed.

## V.     Hostile Work Environment Claim

In her Amended Complaint, Plaintiff alleges that Delta created a hostile work environment. (Am. Compl. ¶¶ 1, 95.) "To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal citation and quotation marks omitted). While the Court must consider the "totality of the circumstances" when evaluating a hostile work environment claim, it may consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive

utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* (internal citation and quotation marks omitted).

The standard for establishing a hostile work environment is "high." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). However, at the motion to dismiss stage, the Second Circuit has cautioned, "against setting the bar too high." *Id.* Thus, to avoid dismissal, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Patane*, 508 F.3d at 113 (internal citation omitted).

As an initial matter, the Court deems this claim abandoned. Delta moved to dismiss this claim and Plaintiff neither disputes Delta's arguments, nor defends this claim in anyway. Where, as here, Plaintiff fails to address Delta's arguments in her opposition, the Court deems Plaintiff's silence as a concession that Plaintiff is abandoning her claim. *See Romeo & Juliette Laser Hair Removal, Inc*, 2014 WL 4723299, at *7 ("A plaintiff abandons a claim where [s]he raises it in the complaint but remains silent on the issue elsewhere in the record." In addition, "[a]t the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim[].") (internal citation omitted). However, assuming *arguendo* that Plaintiff did not abandon her hostile work environment claim, she has failed to plead sufficient facts to allege a viable claim. She asserts nothing in her Amended Complaint that would lead the Court to conclude that Plaintiff's work environment was objectively hostile. (*See generally*, Am. Compl.; Pl.'s Opp'n.) Accordingly, Plaintiff's hostile work environment claim is dismissed.

## VI.     State, Local, and Common Law Claims

Under 28 U.S.C. § 1367(c)(3), "a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)).  A district court's discretion is guided by "balance[ing] the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7.

Along with her federal claims, Plaintiff asserts nine NYSHRL and NYCHRL claims as well as a common law negligence claim.  (*See* Am. Compl. ¶¶ 103-129, 137-143.)  Considering the factors set forth above, there is no justifiable reason for the Court exercise supplemental jurisdiction over Plaintiff's remaining claims.  These claims are dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss for failure to state a claim are granted with prejudice as to Plaintiff's Title VII, ADA, failure to accommodate, retaliation, and hostile work environment claims.  As no federal claims remain, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, and common law claims.

IT IS SO ORDERED.

Dated:  Brooklyn, New York
         September 30, 2017

_____
                        /s/

                        DORA L. IRIZARRY
                        Chief Judge